IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JOHN TUSCHHOFF,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 6:19-cv-01149 |
| | ) |
| **USIC LOCATING SERVICES, LLC,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS**

Defendant USIC Locating Services, LLC ("USIC"), by and through counsel and pursuant to Federal Rules of Civil Procedure 37(d), 41(b), Local Rule 7.1, and the Court's inherent power to control its proceedings, offers this memorandum in support of its Motion for Sanctions against Plaintiff John Tuschhoff, seeking dismissal of Plaintiff's Amended Complaint with prejudice and awarding USIC its attorneys' fees. In support of the motion, USIC states the following.[1]

**I.    Statement of the nature of the matter before the Court**

"Fraud on the court is grounds for dismissal with prejudice." *Peerless Indus. Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685, 687 (8th Cir. 1992). Here, Plaintiff has lied under oath about principal and key facts that go to the heart of his claim. Plaintiff alleges that because of USIC's negligence he has suffered personal injury by inhaling gas. (Doc. 14 at ¶¶ 12–13.) Specifically, Plaintiff alleges that through the inhalation of natural gas (a non-toxic gas supplied to millions of homes in the United States), he suffers from a burning sensation in his

---

[1] USIC does not believe that the provisions of Local Rule 37.2 apply to this Motion because it is not directed at a "discovery dispute" as contemplated by that Rule and is premised on more than this Court's authority under Federal Rule of Civil Procedure 37. Nevertheless, counsel for the parties have conferred concerning the nature of Plaintiff's misrepresentations under oath, including in a phone call on May 6, 2021, and the parties have been unable to reach an appropriate resolution.

lungs, bronchial hyperreactivity, shortness of breath, chest tightness, wheezing, and coughing, among a laundry list of other alleged ailments. *See* Ex. A (Pltf's Answ. to USIC 1st Interrog.), at ¶ 7.

Yet in his sworn statements in discovery and at his deposition, Plaintiff has concealed and misrepresented his engagement in behaviors that represent likely alternative causal factors for his alleged respiratory symptoms—including his history of smoking cigarettes and vaping. Significantly, Plaintiff has also lied to his treating physicians, who based their medical opinions and treatment in part on his self-reported (and falsified) medical history.

Plaintiff stated that he "can no longer smoke" cigarettes because of his current respiratory limitations, yet he also understands that "vaping can be every bit as dangerous" for his lungs as smoking. *See* Ex. B, Excerpts from Deposition Transcript of John Tuschhoff ("Tuschhoff Tr."), at 98:4–7. Additionally, Plaintiff testified under oath repeatedly that he "does not vape any longer," does not even "own a vape pen," and "certainly [hasn't] vaped any time over the past year or two." *Id.* at 96:10–98:19. These were lies.

USIC has incontrovertible video and photographic evidence of the Plaintiff vaping outside his home in the week leading up to and following his deposition. *See* Ex. C;[2] Ex. D; Ex. E. Plaintiff lied under oath and lied about causation concerning the symptoms he alleges: a principal element in his claim of negligence. When fraud is committed on the Court, dismissal with prejudice is appropriate. Here, Plaintiff committed perjury on crucial issues of liability and causation. He knew that just twenty-four hours before he answered the questions in his deposition, he was standing in his front yard, vaping. And he continued vaping after his deposition. Sanctions are warranted.

---

[2] Contemporaneous with this Memorandum, USIC is seeking leave to file Exhibit C conventionally, since it is a video file that is unable to be filed electronically through the Court's CM/ECF system.

## II.     Statement of Facts

On April 12, 2019, Plaintiff filed his Petition in the District Court of Sedgwick County, Kansas, which USIC timely removed to this Court on June 7, 2019 (Doc. 1.) Plaintiff filed his Amended Complaint on December 17, 2019. (Doc. 14.) Plaintiff alleges a single count of negligence against USIC. (*Id.* at ¶¶ 14–25.) The central allegation in Plaintiff's claim is that he suffered lung injuries after inhaling natural gas from a broken gas main on June 19, 2017. (*Id.* at ¶¶ 11–13.) Plaintiff was a laborer for the City of Wichita working to repair a water main, and his crew damaged the gas main with a backhoe.

The parties have engaged in extensive discovery, including fourteen total depositions, five of which were of USIC employees. (Docs. 39, 40, 60, 72, 73.) Additionally, USIC has responded to five sets of requests for production by Plaintiff and three sets of interrogatories. (Docs. 22, 25, 37, 46, 88.)[3] Due to material deficiencies in Plaintiff's production of medical records and misstatements in his interrogatory responses, USIC was required to independently submit full records requests (at its own expense) to Plaintiff's pediatrician's office, the hospital that treated him for two days after the incident, and the office of his current treating pulmonologist. This led to the production of 675 pages of records, which USIC shared with Plaintiff. These medical records reveal that Plaintiff had been diagnosed with gastroesophageal reflux disease ("GERD"), that he had suffered from allergies all his life, and had a history of smoking (both tobacco and marijuana), heavy drinking (including a DUI that occurred days before the June 19 incident), and obesity, all of which are risk factors for respiratory complications and virtually all of which Plaintiff had concealed or misrepresented at some point.

---

[3] Plaintiff also sought leave to expand the number of interrogatories, which this Court denied. (Doc. 43.)

3

During discovery, Plaintiff made several sworn statements that turned out to be false and material. Notably, in his interrogatory answers he stated, "I did smoke cigarettes occasionally while I was working for the city of Wichita, about a pack every other week at most," but in his deposition he admitted that at the time of the alleged incident he was smoking "two to three packs per week." *Compare* Ex. F (Pltf's Answ. to USIC 2nd Interrog.) at ¶ 23 *with* Ex. B (Tuschhoff Tr.) at 90:21–24. This later answer contradicts his prior responses not only as to frequency but also as to timeframe. In the medical records of his treating pulmonologist, Dr. Harold Barkman, Jr., Plaintiff had represented that he stopped smoking on February 4, 2017, over four months before the incident. *See* Ex. G, Excerpts from Deposition of Dr. Harold Barkman, Jr. ("Barkman Tr."), at 11:15–25. Again, however, at his deposition Plaintiff admitted that he smoked all the way up to the accident and even tried to continue smoking afterward. Ex. B (Tuschhoff Tr.) at 90:21–91:3.

Given Plaintiff's history of substance abuse and concealing or misrepresenting key facts about his medical history, USIC hired a licensed private investigator, Andrew Alvey, to surveil Plaintiff. *See* Ex. H (Declaration of Andrew Alvey ("Alvey Decl.")), at ¶ 4. Mr. Alvey discovered even more evidence of Plaintiff's lies. In his interrogatory responses, Plaintiff swore that he "vaped for a month" in his teens and that he "can no longer smoke." Ex. F at ¶ 23. Nevertheless, Mr. Alvey observed Plaintiff smoking a vape pen, or "vaping," in the two days leading up to Plaintiff's deposition on April 2, 2021. Ex. H (Alvey Decl.) at ¶ 5. During his observations, Mr. Alvey recorded a video of Plaintiff vaping and submitted it to USIC's counsel. Ex. C (pending Order to file conventionally); Ex. H (Alvey Decl.) at ¶ 6. The video shows Plaintiff standing in his front yard at 8:49 in the morning on April 1, smoking his vape pen, and talking on the phone for approximately three minutes. Ex. C (pending Order to file conventionally); Ex. D (screenshots taken from April 1 video); Ex. H (Alvey Decl.) at ¶ 6. The next day, Plaintiff repeatedly lied in his

4

testimony under oath about whether he vaped. Ex. B (Tuschhoff Tr.) at 96:10–98:19. "**Q.** And so you certainly haven't vaped any time over the past year or two, correct? **A.** Correct. **Q.** All right. And that's your testimony under oath? **A.** Yes, sir." *Id.* at 97:23–98:3.

That is far from the only evidence of Plaintiff's vaping that USIC obtained. On March 31, April 7, April 8, and April 9, Mr. Alvey or his colleague observed Plaintiff vaping and/or holding a vape pen in his mouth. Ex. H (Alvey Decl.) at ¶¶ 5–7. Some of this footage is even clearer and closer than the footage taken on April 1. *See, e.g.,* Ex. E. USIC could provide additional video evidence of Plaintiff's vaping if needed. In short, both before *and* after his deposition, Plaintiff was observed vaping in public, contrary to his repeated, sworn denials.

Plaintiff also has now admitted that he falsified other answers to USIC's discovery requests. In response to RFP No. 28, Plaintiff stated that "I have never been diagnosed with GERD," even though his own pediatrician diagnosed him with GERD (gastroesophageal reflux disease) within *four days* after the incident at issue and prescribed Pepcid. Ex. I (Depo. Ex. 83) at ¶ 28; Ex. J (Depo. Ex. 70) at p. 2. GERD has been strongly linked with pulmonary disease and is known to cause coughing and wheezing, among many other symptoms, and can lead to asthma. *See* Ex. K (Depo. Ex. 72); Ex. G (Barkman Tr.) at 76:2–18. Plaintiff also swore that he had "to wear a respirator to work" at the time of answering USIC's first set of interrogatories on December 13, 2019. Ex. A at ¶ 10. Dr. Barkman testified that was untrue, however, Ex. G (Barkman Tr.) at 109:5–23, and Plaintiff subsequently admitted his answer was false and that he stopped wearing a respirator around October 2018—over a year prior to giving his interrogatory answers. Ex. B (Tuschhoff Tr.) at 120:13–121:2.

Additionally, Plaintiff swore in his interrogatory responses that he received *no* treatment for any allergy issues prior to the June 19 incident, yet his pediatric records—which USIC had to

5

independently obtain—reveal that he had been treated for allergies throughout his entire life, including *years* of allergy medication prescriptions and diagnoses for conditions such as allergic rhinitis. Ex. F at ¶ 26 ("None prior to this incident."); Ex. B (Tuschhoff Tr.) at 98:20–104:25.

Plaintiff also swore that, at the time of the incident, gas was "blasting" in his face from "2 to 3 feet in front of [his] face." Ex. A at ¶ 5. Yet this testimony was directly contradicted by Plaintiff's coworkers who were also there at the time, and at his deposition Plaintiff admitted his testimony could not possibly be true. Ex. B (Tuschhoff Tr.) at 67:11–68:3. In all, Plaintiff admitted there were "multiple instances where [he] made misstatements under oath in [his] Interrogatories." *Id.* at 121:8–11.

These misrepresentations affected not only the manner in which this lawsuit has been litigated; they also significantly affected the way that Plaintiff was diagnosed and treated by his own treating physicians in the first place. Dr. Barkman, the only treating physician to independently diagnose Plaintiff with any injury related to the exposure on June 19, 2017, realized at his own deposition that he had been given materially false information throughout his treatment of Plaintiff. The following exchange summarizes some of the key revelations:

> Q. Okay. [Plaintiff] reported that he didn't have allergies but he did, correct?
> A. Right.
> Q. He reported that he had dramatic weight loss but he actually gained weight, correct?
> A. Correct.
> Q. He did not report to you that he had been diagnosed with GERD, correct?
> A. Correct.
> Q. And he actually had been diagnosed with GERD, correct?
> A. Correct.
> Q. And he also told you that when you were examining him that he had had the gas blowing in his face for several minutes, right?
> A. Correct.
> Q. Okay, and all of those were wrong, we've shown you that, correct?
> …
> A. Correct.

6

Ex. G (Barkman Tr.) at 91:23–92:17. Plaintiff also had told Dr. Barkman that he had never done drugs and did not consume alcohol, both of which were false, and he significantly underreported his frequency and duration of cigarette smoking. *Id.* at 11:19–12:13, 62:19–67:11. Dr. Barkman agreed with the statement that some of the "inconsistencies" between Plaintiff's self-reported medical history and the actual facts are "fairly material" and bear directly on the lung conditions for which Dr. Barkman was assessing Plaintiff. *Id.* at 67:5–11.

As a result, during his deposition, after learning about Plaintiff's many misrepresentations and concealment of material information concerning the nature of his injury and his medical history, Dr. Barkman—the only medical expert that Plaintiff designated in his case-in-chief to support the element of causation—explained that he *cannot* opine that Plaintiff's alleged injuries or conditions were caused by his exposure on June 19, 2017. *See id.* at 116:17–25, 132:16–19 ("**Q.** You are unable to render a medical opinion to a reasonable degree of certainty as to causation? **A.** Yes.").

Dr. Barkman also noted that, aside from Plaintiff's self-reported medical history and symptoms, only one objective test had produced a result consistent with Dr. Barkman's diagnosis of reactive airways dysfunction syndrome ("RADS")—all the other tests, including tests performed at the hospital in the immediate aftermath of the alleged injury, came back normal or negative, sometimes even better than anticipated for a person of Plaintiff's age and size. *See* Ex. G (Barkman Tr.") at 62:13–18, 86:4–18, 89:21–25 ("The only thing he could potentially really have would be RADS because everything else was normal in terms of x-ray, et cetera."), 102:17–21. Dr. Barkman agreed that Plaintiff's positive methacholine challenge test result could be explained by other conditions that we now *know* Plaintiff exhibited prior to the test, and that Dr. Barkman's presumption that Plaintiff did not experience shortness of breath before the exposure on June 19,

7

2017 is based solely on Plaintiff's self-reported history, a history that is now entirely suspect. *Id*. at 89:11–92:24.

### III. Statement of the question presented

Plaintiff willfully lied under oath, committing fraud on this Court. Pursuing his litigation in bad faith has seriously prejudiced USIC. To what extent should sanctions be enforced against Plaintiff for his bad faith conduct?

### IV. Plaintiff's Amended Complaint should be dismissed with prejudice, and USIC should be awarded its attorneys' fees.

Plaintiff has lied to this Court about a key element in his single count of negligence against USIC. When a party displays such willful bad faith, dismissal of his complaint with prejudice is an appropriate sanction. *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1045 (10th Cir. 2005). Federal Rule of Civil Procedure 37(d) permits dismissal of a case as a sanction for willfully providing false answers during the discovery process. *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1173 (10th Cir. 1995). "If the plaintiff fails . . . to comply with these rules . . . a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

Plaintiff was questioned at length about his answer to interrogatory number 23 and the nature of his smoking habits. Ex. B (Tuschhoff Tr.) at 96:10–98:19; *see also* Ex. F, at ¶ 23. The following exchanges took place during Plaintiff's deposition:

> Q. You then say, I tried vaping in my teens, right?
> A. Yes.
> Q. And that was it? You don't vape any longer?
> A. No.

Ex. B (Tuschhoff Tr.) at 97:6–11.

> Q. And so you certainly haven't vaped any time over the past year or two, correct?
> A. Correct.
> Q. All right. And that's your testimony under oath?
> A. Yes, sir.

> Q. All right. You understand that vaping can be every bit as dangerous for your lungs as smoking, right?
> A. Yes.
> Q. And you don't own a vape pen?
> A. No.
> Q. What did you vape when you did vape?
> A. I did own a vape pen at the time. I didn't -- I threw it away when I quit.
> Q. Which was before the incident?
> A. Yes, sir.
> Q. And you've never owned a vape pen after that?
> A. No.
> Q. And you've never vaped after that?
> A. No.

*Id.* at 97:23–98:19.

The video submitted as Exhibit C to this Memorandum (pending Order to file conventionally) shows Plaintiff using a vape pen for several minutes straight just 24 hours before his deposition started. Screenshots taken from that video are also included as Exhibit D. And other video and photographic evidence shows Plaintiff continuing to vape, proving that this was not a one-off lapse. *See* Ex. E. There can be no conclusion other than that Plaintiff willfully lied under oath with the intent to withhold evidence fatal to his case. The Tenth Circuit holds that "when false evidence or testimony is provided under oath, knowingly and with intent to deceive, a party commits a fraud on the court." *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1181 (10th Cir. 2009) (affirming trial court's decision to dismiss with prejudice as sanction for submitting false evidence).

This lying cuts to the heart of this case because, at a minimum, it calls into question the nature and extent of Plaintiff's damages. In view of the fact that nearly *all* of Plaintiff's objective tests have come back normal and negative for injury, the central basis for his injury claim comes from Plaintiff's self-reported medical history. Plaintiff's assertions that he "can no longer smoke" and that he "tried" vaping but was unable to do so after the incident are directly belied by the

evidence of his repeated recent vaping. Moreover, Plaintiff's entire body of lies—both to USIC under oath in this litigation as well as to his treating physicians—undermines the credibility and reliability of his self-reported medical claims in their entirety, which is the basis on which his medical diagnoses and treatment have been conducted. *See id.* at 1180 ("The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all the culpable party's submissions throughout litigation.").

The facts of this case are closely analogous to those in *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172 (10th Cir. 1995). There, the Tenth Circuit affirmed a district court's decision to dismiss a plaintiff's case with prejudice as a sanction for willfully lying in both interrogatory answers and in her deposition testimony. *Id.* at 1173–74. "The dismissal was based on the district court's determination that Appellant willfully provided false and misleading answers on a continual basis during the discovery process." *Id.* The plaintiff sought damages for alleged personal injuries to her lower back sustained while working for the defendant and testified that she had no lower back pain prior to the alleged incident in the complaint. *Id.* at 1173. The defendant sought to "independently confirm the veracity of the responses" and discovered that the plaintiff was lying. *Id.*

The defendant's investigation uncovered that plaintiff had previously injured her lower back prior to the alleged incident. *Id.* at 1174. When the defendant discovered plaintiff's lies, it brought a motion to dismiss as a sanction pursuant to Federal Rule of Civil Procedure 37(d), and the district court granted it. *Id.* "Due process requires that the discovery violation be predicated upon willfulness, bad faith, or some fault of petitioner rather than inability to comply" for such a sanction to be imposed. *Id.* (cleaned up). The Tenth Circuit held there was no abuse of discretion by imposing the sanction because of plaintiff's "willful conduct" in bad faith. *Id.* at 1175. In

10

affirming the dismissal, the Court held "the egregious nature of Appellant's conduct, the effect on [defendant] and the interference with the judicial process properly led to the dismissal." *Id.*

A similar set of circumstances is presented before this Court. Plaintiff has fraudulently concealed principal facts concerning the causation of his alleged injuries. Just as the defendant did in *Archibeque*, USIC undertook its own independent investigations to discover Plaintiff's lies. This includes not only the hiring of a private investigator, but also independently obtaining Plaintiff's medical and pediatric records, which revealed, among other things, an extensive history of allergy treatments that Plaintiff had concealed. As in *Archibeque*, the discovery of these lies and misrepresentations came at great expense to USIC and prolonged this litigation unnecessarily.

In another case, *Chavez v. City of Albuquerque*, the Tenth Circuit affirmed the district court's dismissal with prejudice of a plaintiff's case "as a sanction for perjuring himself during discovery" when the lies were "material to the determination of the central issue in the case." 402 F.3d at 1045, 1046. In *Chavez*, the plaintiff knowingly provided false interrogatory answers and deposition testimony regarding a key element to the defendant's defense to liability. *Id.* at 1045. The Tenth Circuit held that dismissal was appropriate because the evidence supported "willfulness, bad faith, or some fault of petitioner." *Id.* at 1044 (cleaned up).

Tenth Circuit case law provides certain factors for this Court to consider in its decision to dismiss Plaintiff's case with prejudice against USIC, though these factors are neither exhaustive nor weighted equally. *See id.* at 1044 (listing five factors). All favor USIC: (1) USIC has suffered serious prejudice in having to defend against and investigate Plaintiff's false representations, including hiring a private investigator and paying for additional medical records; (2) this case continues to interfere with the judicial process, *see Garcia*, 569 F.3d at 1181 ("[W]hen a party wilfully [sic] submits false evidence, it imposes substantial burdens not only on the opposing party,

11

but also on the judicial system itself, as the extent and relevance of the fabrication are investigated."); (3) the Plaintiff is obviously culpable based on his admitted misrepresentations and his indisputable lying about vaping; (4) as *Chavez*, *Archibeque*, and *Garcia* hold, a warning to the offender is unnecessary for testimony under oath; and (5) a lesser sanction is not appropriate when all factors "call[ ] for the imposition of severe consequences." *Chavez*, 402 F.3d 1044–46; *see Archibeque*, 70 F.3d at 1175.

Other federal appellate decisions support the appropriateness of severe sanctions under these circumstances. For example, the Second Circuit, in *Shangold v. Walt Disney Co.*, affirmed the district court's dismissal with prejudice when defendants established through incontrovertible evidence that plaintiffs repeatedly lied in their depositions regarding a pivotal element to their cause of action. 275 F. App'x 72, 73–74 (2d Cir. 2008) (unpublished). The Court held, likewise, that dismissal "is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *Id.* at 74. Here, Plaintiff's lies illustrate the same. "Plaintiffs' repeated false statements show their willfulness and bad faith." *Id.*; *see also Peerless Indus. Paint Coatings Co.*, 979 F.2d at 686. In *Peerless Industries*, the Eighth Circuit affirmed a district court's sanction of dismissal with prejudice and award of attorneys' fees when the plaintiff signed interrogatories that "misstated known, relevant facts." *Id.* It was "fraud on the court." *Id.* The same is true here. Through his lies, Plaintiff has committed fraud on this Court.

Plaintiff's willful decision to double down on his lies about his vaping habits alone warrant severe sanctions and dismissal. He lied not once, but twice under oath on a key issue relating to the nature of his injuries. Evidence of his bad faith, though, permeates his deposition. Only when questioned did Plaintiff admit he was actually smoking two to three packs of cigarettes at the time of the alleged incident: not "a pack every other week at most" as sworn in his interrogatory answer,

12

or having quit four months before the incident, as he previously told Dr. Barkman. Ex. F at ¶ 23; Ex. B (Tuschhoff Tr.) at 90:21–24. Similarly, he lied about being within two to three feet of the blowing gas, he lied about being under a doctor's orders to use a respirator at work, and he lied about having ever been diagnosed with GERD or treated for allergies. Ex. A at ¶¶ 5, 10; Ex. F at ¶ 26; Ex. B (Tuschhoff Tr.) at 67:11–18, 98:20–104:25, 120:13–121:2. Coupled with these additional lies, his testimony is riddled with inconsistencies and contradictions regarding the status of his medical conditions, which directly manipulated his treating physician's decision-making. The incontrovertible evidence supports that Plaintiff has been pursuing this entire litigation in bad faith, fabricating evidence and exaggerating his injuries in the hope of extracting more money from USIC. His case should be dismissed with prejudice.

In the event that the Court decides to impose a lesser sanction, however, USIC asks that, at a minimum, it be awarded its attorney's fees in connection with bringing this motion, its fees in hiring a private investigator to establish Plaintiff's lying about vaping, and an adverse inference instruction to the jury. USIC also respectfully requests all other relief that the Court deems appropriate in the exercise of its considerable discretion under Rule 37(d) and its inherent power.

**V.      Conclusion**

Plaintiff acted in willful bad faith. His conduct calls for the imposition of severe sanctions. He intentionally withheld evidence and lied under oath multiple times, both in his answers to USIC's interrogatories and repeatedly during his deposition. Plaintiff attempted to conceal material health conditions such as GERD and allergies through false interrogatory answers. He misrepresented the nature of his exposure and his work restrictions. And, further, he misrepresented the timing and frequency of his smoking in interrogatories and to his doctor. These misrepresentations are material to USIC's defense and, moreover, are directly relevant to the

13

necessary element of causation in Plaintiff's single claim of negligence against USIC. And these lies are uncontroverted.

Indeed, the evidence submitted with this Memorandum shows Plaintiff vaping the very day before his deposition, as well as afterward. For the reasons stated in this Memorandum, USIC moves this Court to dismiss this suit with prejudice and to award USIC its attorneys' fees in defending this action. Plaintiff intentionally committed perjury, including in his answer to the final question of his deposition: "**Q.** Have you answered all of the questions that I've posed to you accurately and in a truthful manner? **A.** Yes." Ex. B (Tuschhoff Tr.) at 138:19–22.

Respectfully submitted,

**GM Law PC**

By    /s/ *David B. Helms*
    David B. Helms  #78831
    8000 Maryland Avenue, Suite 1060
    St. Louis, MO 64105
    (314) 474-1750
    (816) 471-2221 fax
    davidh@gmlawpc.com

    Benjamin D. Mooneyham  #27967
    1201 Walnut St., Suite 2000
    Kansas City, MO 64106
    (816) 471-7700
    (816) 471-2221 fax
    benm@gmlawpc.com

    *Attorneys for Defendant USIC Locating Services, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the foregoing was electronically filed on the 17th day of May 2021, via the Court's CM/ECM filing system which will send notice to all counsel of record.

/s/:  David B. Helms
**Attorney for USIC Locating Services, LLC**