## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JOHN TUSCHHOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-1149-EFM-TJJ |
| | ) | |
| USIC LOCATING SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on two motions: Defendant's Motion for Sanctions (ECF No. 104) and Plaintiff's Motion for Leave to Amend to Add a Claim for Punitive Damages (ECF No. 109). Each party opposes the other's motion. Pursuant to Federal Rules of Civil Procedure 37(d) and 41(b), Local Rule 7.1, and the court's inherent power, Defendant asks the Court to enter an order enforcing sanctions against Plaintiff, dismissing Plaintiff's Amended Complaint with prejudice, and awarding Defendant its attorney's fees. Defendant contends Plaintiff lied under oath about principal and key facts that go to the heart of his claim. Pursuant to Federal Rule of Civil Procedure 15, Plaintiff seeks leave to amend his complaint to add a claim for punitive damages. Plaintiff contends Defendant's employees acted wantonly in marking the site in question and in the investigation that followed, and that Defendant ratified the wanton conduct and acted with corporate wantonness. As set forth below, the Court will grant Defendant's motion in part and deny it in part, and the Court will deny Plaintiff's motion.

### I.       Relevant Background

On June 19, 2017, as a City of Wichita employee, Plaintiff was part of a team repairing a water pipeline. A fellow City employee operated the backhoe used to dig the hole to access the

water pipeline. Prior to the excavation, City employees had ascertained the location of all underground facilities in the proposed area of excavation by utilizing the "Kansas One Call" system to request locating and marking services be performed. Defendant performed the locating and marking services pursuant to the request. Plaintiff alleges Defendant inaccurately marked an underground gas distribution line several feet from its actual location, and while trying to excavate the water pipeline, City employees contacted the gas distribution line. Plaintiff contends that because of this error, the backhoe operator damaged the gas line while attempting to access the underground water pipe. Plaintiff alleges he suffered inhalation injuries when the gas line ruptured.[1]

Both motions arise out of deposition testimony and other discovery conducted in this case. Defendant contrasts Plaintiff's interrogatory answer regarding cigarette smoking while he was employed by the City of Wichita, in which he claimed to have smoked about a pack every other week, with his deposition testimony that he was smoking two to three packs per week at the time of the incident. During his deposition, Plaintiff also denied having vaped any time over the past year or two. However, Defendant hired an investigator who observed and recorded Plaintiff vaping while standing outside his home on each of the two days preceding his deposition.[2] Defendant also notes that in his written discovery responses, Plaintiff denied ever having been diagnosed with GERD (gastroesophageal reflux disease), stated he had to wear a respirator to work in December 2019, denied having received treatment for allergy issues before the June 19 incident, and stated that during the incident one end of the gas main ended up two to

---

[1] *See* Amended Complaint (ECF No. 14) ¶¶6-13.

[2] Defendant did not disclose the surveillance during Plaintiff's deposition. Plaintiff first learned of it when Defendant filed its Motion for Sanctions.

three feet from his face and gas was blasting in his face. Defendant asserts each was a misrepresentation, as evidenced by conflicting deposition testimony from Plaintiff and one of his treating physicians, Dr. Barkman. From these facts Defendant argues that Plaintiff's action should be dismissed because Plaintiff has concealed, misrepresented, and lied.

In his motion, Plaintiff provides a lengthy recitation of facts concerning the incident and Plaintiff's injury, the purpose of having underground utilities marked to prevent damage and injury, how Defendant trains its locators and whether this locate was performed in compliance with the training, Defendant's ensuing investigation and ratification of the locate, and the economic factors affecting how Defendant performs its locating tasks. Plaintiff relies on these facts to demonstrate he meets the standard to seek punitive damages against Defendant.

## II.   Legal Standards

A district court has inherent equitable powers to dismiss a case with prejudice as a sanction for abusive litigation practices during discovery.[3] However, due process requires more than inability to comply—the violation must be predicated on willfulness, bad faith, or fault.[4] In exercising its discretion, the following factors may inform the court's decision in determining whether dismissal is an appropriate sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[5] The Tenth Circuit has

---

[3] *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1179 (10th Cir. 2009); *see also* Fed. R. Civ. P. 37(b)(2).

[4] *Archibeque v. Atchison, Topeka & Santa Fe Ry Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995).

[5] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992).

directed that dismissal is a severe sanction that should only be used when lesser sanctions would be ineffective,[6] and dismissal is warranted only when aggravating factors outweigh the judicial system's "strong predisposition to resolve cases on their merits."[7]

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. The parties may amend a pleading once "as a matter of course" before trial if they do so within (A) 21 days after serving the pleading, or (B) "if the pleading is one to which a responsive pleading is required," 21 days after service of the responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[8] Other amendments are allowed "only with the opposing party's written consent or the court's leave."[9] Rule 15(a)(2) also instructs that the court "should freely give leave when justice so requires."[10] The court's decision to grant leave to amend a complaint, after the permissive period, is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.[11] The court may deny leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[12]

---

[6] *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993); *Ehrenhaus*, 965 F.2d at 921.

[7] *Davis v. Miller*, 571 F.3d 1058, 1061 (10th Cir. 2009) (quoting *Ehrenhaus*, 965 F.2d at 921).

[8] Fed. R. Civ. P. 15(a)(1).

[9] Fed. R. Civ. P. 15(a)(2).

[10] *Id.*; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[11] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

[12] *Id.* (quoting *Foman*, 371 U.S. at 182).

When the deadline for amending pleadings set in the scheduling order has passed, as is the case here, Federal Rule of Civil Procedure 16(b)(4) is implicated. Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[13]

A court will apply a two-step analysis based on both Rule 16(b) and Rule 15(a) when faced with a request to amend a complaint past the scheduling order deadline.[14] In other words, the court will first determine whether the moving party has established "good cause" within the meaning of Rule 16(b)(4) to justify allowing the untimely motion. Only after determining good cause has been established will the court proceed to determine if movant has satisfied the more lenient Rule 15(a) standard.[15]

To establish good cause under Rule 16(b)(4), the moving party must show the deadline could not have been met even if it had acted with due diligence.[16] The lack of prejudice to the nonmovant does not show good cause.[17] A district court's determination as to whether a party has established good cause sufficient to modify a scheduling order amendment deadline is within the court's discretion, and will be reviewed only for abuse of discretion.[18]

---

[13] Fed. R. Civ. P. 16(b)(4).

[14] *See, e.g., Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group,* No. 12-1185-WEB, 2003 WL 21659663, at *2 (D. Kan. March 13, 2003).

[15] *See Boatright v. Larned State Hosp.*, No. 05-3183-JAR, 2007 WL 2693674, at *6 (D. Kan. Sept. 10, 2007) (recognizing the Rule 15(a) standard as more lenient than the "good cause" standard of Rule 16(b)).

[16] *Id.* at *5.

[17] *Lone Star Steakhouse*, 2003 WL 21659663, at *2.

[18] *Ingle v. Dryer*, No. 07-cv-00438-LTB-CBS, 2008 WL 1744337, at *2 (D. Colo. April 11, 2008).

In considering whether a proposed amendment is futile, the court uses the same analysis that governs a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.[19] Therefore, the court will deny an amendment on the basis of futility only when, accepting the well-pleaded allegations of the proposed amended complaint as true and construing them in the light most favorable to the plaintiff, the court determines the plaintiff has not presented a claim to relief that is plausible on its face.[20] A complaint or amendment thereof need only make a statement of the claim and provide some factual support to withstand dismissal.[21] It does not matter how likely or unlikely the party is to actually receive such relief, because for the purposes of dismissal all allegations are considered to be true.[22] The party opposing the proposed amendment bears the burden of establishing its futility.[23]

## III.   Analysis

### A.   Defendant's Motion for Sanctions

Defendant asserts Plaintiff made several sworn statements during discovery that turned out to be false and material. These include the following: (1) in answer to an interrogatory, Plaintiff stated that while employed by the City of Wichita he smoked about a pack of cigarettes every other week, but in his deposition he said he was smoking two to three packs a week at the time of the incident; (2) the medical records from Dr. Barkman (Plaintiff's pulmonologist)

---

[19] *See Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000).

[20] *Little v. Portfolio Recovery Assocs., LLC*, 548 F. App'x 514, 515 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21] *Twombly*, 550 U.S. at 555.

[22] *Id.* at 556.

[23] *Mars v. Novartis Pharm. Corp.*, No. 11-2555, 2012 WL 1288729, at *2 (D. Kan. April 16, 2012).

indicated Plaintiff had stopped smoking four months before the incident, but in his deposition he admitted he was still smoking at the time of the incident; (3) in answer to an interrogatory, Plaintiff stated he vaped in his teens but can no longer smoke, and in his deposition Plaintiff testified he hadn't vaped over the past year or two, but Defendant's private investigator observed Plaintiff vaping in the two days leading up to his deposition; (4) in response to an RFP, Plaintiff stated he had never been diagnosed with GERD, but his pediatrician diagnosed him with the condition four days after the incident; (5) also in answer to an interrogatory, Plaintiff stated he had to wear a respirator at work, but in his deposition admitted he had stopped wearing a respirator around October 2018, which was more than a year before he answered the interrogatory; (6) Plaintiff denied having received treatment for allergies before the incident, but his pediatric records reveal he had been treated for allergies throughout his entire life; and (7) although he answered an interrogatory by saying gas was "blasting" in his face from "2 to 3 feet in front of [his] face," he admitted in his deposition that couldn't be true.

Defendant's argument for the sanction of dismissal relies primarily on facts related to Plaintiff's vaping and cigarette smoking. According to Defendant, "[t]here can be no conclusion other than that Plaintiff willfully lied under oath with the intent to withhold evidence fatal to his case."[24] More specifically, Defendant contends the nature and extent of Plaintiff's damages are called into question, and the credibility and reliability of his self-reported medical claims is undermined. Defendant does not mince words: in the memorandum in support of its motion, some version of the word "lie" appears 25 times in reference to Plaintiff, and another 33 times in Defendant's reply brief.

---

[24] ECF No. 105 at 9.

Plaintiff strongly denies any purpose of thwarting the defense or gaining tactical advantage. Instead, Plaintiff admits he wrongly denied vaping and states he began again in late 2020 and is currently still vaping. He claims he began again because of stress arising from his wife being pregnant and from having his hours cut at work due to Covid-19 which caused him to fall behind on his bills and rent.[25] He turned to nicotine to destress and calm his anxiety, and claims he did not answer truthfully during his deposition because he was embarrassed to admit he has an addiction.[26] Putting aside for the moment Plaintiff's explanation, it is apparent Plaintiff gave false discovery responses about his history of vaping and inconsistent answers about the frequency of his former cigarette smoking.

Although Plaintiff admits his false testimony with respect to vaping, he firmly denies having been dishonest in any other respect. The Court finds the other instances of alleged lying are not falsehoods and/or are immaterial. When asked in his deposition about GERD and Pepcid, Plaintiff's answers reveal no intent to hide the fact that he was taking Pepcid or to lie about any diagnosis contained in his medical records. Instead, it is apparent Plaintiff lacked familiarity with the acronym GERD, and his responses resulted from not knowing what the condition is as opposed to being untruthful. Plaintiff denies he has a consistent allergy problem, as Defendant alleges. The medical records support Plaintiff's assertion. The only references to allergies show

---

[25] Plaintiff makes these assertions in an errata sheet to his deposition. *See* ECF No. 119-2 at 4 ("I know I should not have lied before, I am sorry.")  But as Defendant points out, permission to change deposition testimony under Federal Rule of Civil Procedure 30(e) "does not authorize changes because the deponent lied, misspoke, or otherwise wants to change or clarify his testimony." *Summerhouse v. HCA Health Servs.,* 216 F.R.D. 502, 505 (D. Kan. 2003) (citing *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)). For purposes of this motion, at least, Plaintiff's attempt to change his testimony via an errata sheet is ineffective.

[26] ECF No. 119-2 at 5.

he took antihistamines on an episodic basis, such as when he went camping or visited his grandmother who smoked heavily inside her home. And while Plaintiff referred to having worn a respirator because of exposure to dust in another job he had after this incident, he did not claim to have done so under doctor's orders. Although it is unclear how long he worked in that position, Defendant does not dispute that Plaintiff did wear a respirator for some period of time after the incident. With respect to how long he was exposed to the discharge from the gas line after it ruptured, Plaintiff testified it had been a matter of seconds, and did not remember telling Dr. Barkman his exposure lasted a matter of minutes. But Dr. Barkman was not asked for an opinion that took into account the length of Plaintiff's exposure, making the issue non-material. Moreover, in his report Dr. Aris (Defendant's expert witness) states that Plaintiff told him the exposure "may have lasted 5-10 seconds."[27]

Defendant addresses each of the five *Ehrenhaus* factors, again primarily in relation to Plaintiff's discovery responses regarding vaping. Because the Court has found no other testimony to be materially false, the Court will limit its analysis of the five factors to Plaintiff's discovery responses regarding vaping. With respect to the first factor, Defendant claims Plaintiff caused actual prejudice by casting doubt on the veracity of every document and statement Plaintiff has submitted in this case. Defendant notes the expenses of hiring a private investigator to monitor Plaintiff and obtaining Plaintiff's full medical records. To cure the prejudice, Defendant contends it would need an opportunity to supplement Dr. Aris's report, potentially have Dr. Aris re-examine Plaintiff, and perhaps re-depose Plaintiff's witnesses Drs. Barkman and Doty. Plaintiff considers Defendant's argument a stretch, and denies any delay, added extensive expenses, or prejudice to Defendant at trial. Indeed, Plaintiff portrays his false

---

[27] ECF No. 118-1 at 3.

testimony as something of a gift, asserting he has damaged his own credibility which Defendant can attack at trial. Plaintiff also submits that Defendant would have ordered Plaintiff's prior medical records in any event, so the expense of these records is not attributable to Plaintiff's lack of honesty. The Court agrees that any prejudice to Defendant is minimal and can be mitigated. It is an overstatement to contend that the veracity of every statement Plaintiff has made and every document he has produced is suspect. Defendant offers no evidence to substantiate its claimed expenses, thereby depriving the Court of a reasonable basis to make a finding that Defendant suffered expenses in an amount that caused actual prejudice. Finally, Defendant's reference to Dr. Aris is curious. Dr. Aris has opined "there is no basis to find that to a reasonable degree of medical certainty Mr. Tuschhoff's exposure on June 19, 2017 caused the conditions for which he is seeking damages."[28] In reaching his opinion, Dr. Aris noted Plaintiff's history of smoking and vaping, and he knew about the corrections to Plaintiff's health history from reading Dr. Barkman's deposition. Finally, Defendant offers no explanation for its one-sentence statement that it may need to re-depose Drs. Barkman and Doty.[29] Defendant has not demonstrated the extreme prejudice it claims to have suffered.

Second, Defendant argues that Plaintiff's false testimony regarding vaping interfered with the judicial process because it goes to the central issues of causation and damages, and Defendant accuses Plaintiff of intending to inhibit Dr. Barkman's and Dr. Aris's ability to discover the truth concerning facts bearing on his injuries. Defendant contends Plaintiff's conduct easily meets the willfulness standard sufficient to meet dismissal, asserting that Plaintiff continues to deny certain lies. Plaintiff denies the intention Defendant attributes to him, and

---

[28] *Id*. at 4.

[29] Plaintiff named Dr. Doty as an expert witness in life care planning.

argues the relevant inquiry regarding interference with the judicial process is whether the abuse caused delays in the proceedings and stalled the court's docket. The Court agrees with Plaintiff's view of how this factor is to be examined. Extending the discovery period in a case may be considered minimal interference with the judicial process.[30] "[I]nconsistencies likely do not interfere with the judicial process much, if at all, as they may be explored on cross examination."[31]

Third, Defendant asserts Plaintiff's degree of culpability warrants dismissal. According to Defendant, Plaintiff's admission of lying about vaping, continued denial of other lies, and non-credible excuses point to Plaintiff's desire to augment the perception of his injuries and conceal evidence tending to negate causation or future damages. Plaintiff denies he was dishonest for the purpose of gaining a tactical advantage, and disagrees he obtained any tactical advantage by lying. Instead, he asserts he was embarrassed to admit that he relied on nicotine to deal with the stress of an intense litigation process, raising two young children, and struggling financially and at work. The Court finds this factor does not fall entirely in favor of one party or the other.

Fourth, conceding Plaintiff had not been forewarned but citing Tenth Circuit case law, Defendant discounts the importance of considering whether the Court warned Plaintiff in advance. "Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth."[32] Certainly one should be

---

[30] *See Banks v. St. Francis Health Center, Inc.*, No. 15-CV-2602-JAR, 2016 WL 6905581, at *3 (Nov. 21, 2016).

[31] *Maples v. Vollmer*, No. CIV 12–0294 JB/RHS, 2013 WL 1009558, at *22 (D.N.M. Mar 5, 2013).

[32] *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1045 (10th Cir. 2005).

able to rely on a party's oath of truthfulness. But when a case is still in pretrial posture, courts are less inclined to conclude the sanction of dismissal is warranted without the offending party having received a warning.[33]

Finally, in its motion Defendant argues the appropriate sanction is nothing less than dismissal. While Plaintiff asserts no sanction is necessary, if the Court finds otherwise, he suggests the Court issue a reprimand and warning and allow Defendant to expose Plaintiff's misrepresentations about vaping to the jury during trial. In its reply, Defendant suggests an alternative sanction of prohibiting Plaintiff from introducing evidence regarding his injury or causation at trial, thereby exposing Plaintiff to summary judgment. This alternative would be functionally equivalent to dismissal. But recognizing the harshness of dismissal as a remedy and keeping in mind that in determining what sanction should be imposed, "it is most important that the court consider the purposes to be served by imposing the sanction,"[34] the Court rejects both alternatives Defendant proposes.

In arguing in favor of dismissal Defendant relies on two Tenth Circuit cases that affirmed orders of dismissal, *Chavez* and *Archibeque*. In both, the misrepresentations that led to dismissal involved facts central to the case, and Defendant argues the same is true here. While the Court agrees that facts related to smoking are relevant to causation and damages, Plaintiff did not deny ever having vaped or claim to have completely stopped smoking cigarettes at the time of the

---

[33] *See Banks*, 2016 WL 6905581 at *4 (noting that when alleged false testimony was first raised in motion to dismiss based on deposition testimony and interrogatory answers, dismissal not warranted as court had issued no advance warnings threatening dismissal); *Horn v. Mesa Well Servicing, L.P.*, No. 15-cv-0329 SMV/CG, 2016 WL 9777359, at *7 (D.N.M. June 8, 2016) (finding that where falsehoods appeared in deposition testimony and interrogatory answers, fourth *Ehrenhaus* factor did not support dismissal because court had given "no prior warnings . . . that dismissal was on the table").

[34] *Banks*, 2016 WL 6905581, at *2.

incident.[35] More to the point, Dr. Aris wrote his report after performing an independent medical

exam of Plaintiff on December 11, 2020 by Zoom, after learning of Plaintiff's admissions related

to his actual smoking and vaping usage during his April 2, 2021 deposition, and after speaking

with Plaintiff on April 9, 2021. Dr. Aris's report concludes there is no basis to find the June 19,

2017 incident caused Plaintiff's alleged injuries. He lists the following as "important medical

comorbidities" that are "more plausible explanations for the various symptoms he reports:" "a

history of allergies, GERD, alcohol use, a smoking history, drug use, high blood sugar, and

obesity."[36] The report does not contain a more detailed analysis of Plaintiff's smoking history,

nor does it attribute any of Plaintiff's symptoms to the frequency, recency, or amount of

Plaintiff's cigarette smoking or vaping. So while the issues of causation and damages are central

to the case, the particular facts about which Plaintiff was dishonest or provided inconsistent

answers are not.

Because Plaintiff's false statements are not central to the case, Defendant has not suffered

the extreme prejudice it claims, and there has been no resulting delay in these proceedings, the

Court concludes an order of dismissal without prior warning is not appropriate. But Plaintiff does

bear culpability for his admittedly false statements, regardless of his motivation for making

them. "Discovery in civil litigation is, at its core, a fact-finding, truth-seeking process. As such, it

---

[35] While Defendant points to Plaintiff's interrogatory answer that he smoked one to two packs of cigarettes a week during the time he was employed by the City of Wichita, when asked more specifically during his later deposition about how much he was smoking at the time of the incident, Plaintiff answered that he was then smoking two to three packs a week. The Court notes Plaintiff earlier reported the same two to three pack a week usage to Dr. Doty. *See* ECF No. 118-7 at 20.

[36] ECF No. 118-1 at 4.

demands good faith, unambiguous, direct and forthright participation from litigants."[37] Plaintiff's conscious decision to give false sworn testimony cuts to the very core of our civil discovery process, and there must be consequences for his actions beyond merely being subject to impeachment at trial. That brings the Court to Plaintiff's Motion for Leave to Amend to Add a Claim for Punitive Damages.

**B.      Plaintiff's Motion for Leave to Amend to Add a Claim for Punitive Damages**

Plaintiff seeks leave to amend his complaint to include a claim for punitive damages, arguing Defendant ratified the reckless and wanton conduct of its employee Lonny Gregory who endangered the safety of Plaintiff and others. Plaintiff claims that Gregory, the locator who marked the buried utilities, intentionally chose not to use the available map to measure the location of the underground gas distribution line before marking it. Plaintiff contends Gregory's failure was caused by an economic motivation to mark the gas lines quickly, thereby allowing the locator to complete more jobs. Plaintiff further alleges Gregory's supervisors ratified and encouraged his conduct, which Plaintiff characterizes as wanton due to the recognized high danger and probable fatal consequences. Plaintiff contends Gregory acted with reckless disregard and/or complete indifference while locating the pipe, thereby making Defendant liable for punitive damages under Kansas law.

Defendant denies that Plaintiff's proposed amended complaint alleges facts sufficient to meet the legal standard for punitive damages. But as a procedural matter, Defendant asserts Plaintiff's motion must be denied because he failed to show good cause as required by Federal Rule of Civil Procedure 16 to file his motion 18 months past the Scheduling Order deadline to

---

[37] *LaJeunesse v. BNSF Ry. Co.*, 333 F.R.D. 649, 652 (D.N.M. 2019).

amend pleadings.[38] Defendant also urges the Court to deny the motion under Federal Rule of Civil Procedure 15 because of undue delay, prejudice, and futility.

Plaintiff's motion makes no reference to Rule 16. In his reply, Plaintiff contends he has shown good cause under Rule 16 because he did not learn until February 25, 2021 that Defendant began using "The Academy" training materials before the June 2017 incident, and Defendant did not produce those materials until June 2021. The Court will not consider Plaintiff's Rule 16 argument which he raises for the first time in his reply brief.[39] And although Plaintiff mentions Rule 15 in his motion, he does so only to the extent he quotes the phrase from Rule 15(a)(2) that the Court should "freely give leave when justice so requires."[40] But in his reply, Plaintiff also addresses each of the factors the Court is to consider when deciding whether to grant leave to amend. Because these are also new arguments raised for the first time in Plaintiff's reply brief, the Court will not consider them.

The Court acknowledges that in spite of Plaintiff's failure to properly address Rules 15 and 16, the Court must consider whether justice requires Plaintiff be permitted to amend his Complaint to add a claim for punitive damages. The Court has determined justice is best served

---

[38] The December 31, 2020 deadline was included in the original Scheduling Order in this case (ECF No. 13) and was not extended by any subsequent order.

[39] *See Liebau v. Columbia Casualty Co.,* 176 F. Supp.2d 1236, 1244 (D. Kan. 2001) ("Courts in this district generally refuse to consider issues raised for the first time a reply brief."). Defendant has filed a Motion for Leave to File Surreply in Opposition to Motion for Leave to Amend Complaint (ECF No. 130), pointing out Plaintiff's belated Rule 16 argument. Although the Court is not considering Plaintiff's argument, the Court grants Defendant's Motion for Leave to File Surreply to allow Defendant an opportunity to respond to the new material raised for the first time in Plaintiff's reply. *See Green v. New Mexico,* 420 F.3d 1189, 1196 (10th Cir. 2005) ("Generally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply.").

[40] Fed. R. Civ. P. 15(a)(2).

by denying Plaintiff's motion as the appropriate sanction for his admitted lack of honesty in his written discovery responses and testimony related to vaping. Although dismissal is far too extreme a sanction, the Court finds it necessary to impose this sanction as a consequence of Plaintiff's dishonesty. The Court finds it would be unjust to allow Plaintiff to pursue a punitive damage claim after he abused the discovery process by giving false testimony. Denying Plaintiff's motion will also prevent the delay that would likely result from an amendment to the pleadings at this late stage. In addition, Plaintiff will be facing trial with impaired credibility that is its own self-imposed sanction. The Court finds the combination of the denial of Plaintiff's motion and the prospect of cross-examination using Plaintiff's admittedly false deposition testimony—which cannot be undone by an errata sheet—serve as an effective and appropriate alternative sanction.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Sanctions (ECF No. 104) is GRANTED insofar as a sanction is imposed as described herein, but it is DENIED to the extent it seeks as a sanction an order of dismissal.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Leave to Amend to Add a Claim for Punitive Damages (ECF No. 109) is DENIED.

**IT IS FURTHER ORDERED** that the Motion for Leave to File Surreply in Opposition to Motion for Leave to Amend Complaint (ECF No. 130) filed by Defendant is GRANTED. Defendant shall file the Surreply within five (5) business days of the date of this order.

Dated this 24th day of August, 2021 at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

16