IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN TUSCHHOFF,

    *Plaintiff,*

vs.

    Case No. 19-cv-01149-EFM

USIC LOCATING SERVICES, LLC,

    *Defendant.*

**MEMORANDUM AND ORDER**

    This is an action brought by Plaintiff John Tuschhoff alleging negligence on the part of Defendant USIC Locating Services, LLC. Defendant was called to Plaintiff's job site, an excavation to fix a water main at a residential address, to mark utility lines. Defendant allegedly performed this job negligently, causing Plaintiff's crew to accidentally strike and rupture a natural gas main and Plaintiff to sustain an inhalation injury—namely, reactive airway dysfunction syndrome ("RADS").

    Before the Court are two Motions, both brought by Defendant. Defendant's first Motion asks the Court to exclude the expert testimony of Dr. Harold Barkman, Plaintiff's treating physician, who diagnosed him with RADS and initially stated that Plaintiff's RADS was caused by his work-related inhalation exposure. Defendant contends that Dr. Barkman later recanted this

opinion and can no longer opine as to causation. Relatedly, Defendant moves for summary judgment on the grounds that Kansas law requires expert testimony as to causation in cases such as this, and with a favorable ruling on its *Daubert*[1] motion, Plaintiff is left without admissible expert testimony on that issue. Having reviewed the parties' submissions and after a hearing, the Court agrees with Defendant and grants both Motions (Docs. 144 and 146).

## I.   Factual and Procedural Background[2]

Plaintiff worked as a laborer for a City of Wichita repair crew. On June 19, 2017, Plaintiff and two others were sent to a residential address in Wichita in order to repair a water main located under a concrete driveway. The crew began by breaking up the top layer of concrete. They quickly realized, however, that the previously issued utility locate ticket was no longer valid.[3] Plaintiff's crew called Kansas One-Call to request a new ticket. A representative from Defendant arrived approximately one hour after the request was made. The representative marked the underground utilities at the site and left. Plaintiff's crew then continued the excavation, removing layers of concrete and soil, before progress came to a screeching halt when the crew struck and ruptured a two-inch underground natural gas main. Plaintiff was in the vicinity of the gas main when it ruptured, though the parties dispute exactly how close he was and whether the outflow of natural gas struck Plaintiff's face directly.

Plaintiff was admitted to Via Christi St. Francis Hospital on the same day and was discharged two days later. His treating physician during that time was Dr. Thomas Resch. Dr.

---

[1] *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993).

[2] In accordance with summary judgment procedures, the Court has laid out the uncontroverted material facts in the light most favorable to the non-moving party, the Plaintiff.

[3] The Kansas One-Call Exavactor's Manual provides that locates are valid for 15 calendar days.

Resch noted that Plaintiff was intubated and underwent a diagnostic bronchoscopy "that did not show any signs of inhalation injury." Plaintiff was discharged with a final principal diagnosis of "toxic effect of other specified gases, fumes and vapors" and told to follow up with Dr. Resch within two weeks.

On August 4, 2017, Plaintiff saw Dr. Harold Barkman, a pulmonologist at the University of Kansas Medical Center. During his appointment, Plaintiff took a methacholine challenge test, meant to test the reactiveness or responsiveness of Plaintiff's lungs. The test left Dr. Barkman with the impression that Plaintiff had a "mild bronchial hyperreactivity." Dr. Barkman diagnosed Plaintiff with RADS. In response to a questionnaire later sent by Plaintiff's counsel, Dr. Barkman stated, based upon a reasonable degree of medical certainty, that the work-related gas inhalation exposure on June 19, 2017, caused Plaintiff's RADS.

Defendant deposed Dr. Barkman on March 31, 2021. During the course of that deposition, defense counsel brought numerous items to Dr. Barkman's attention of which he was not aware at the time he opined that the June 19 incident caused Plaintiff's RADS. For instance, Dr. Barkman was informed that Plaintiff smoked between one and two packs of cigarettes per week, smoked marijuana, vaped, had not lost forty pounds between the incident and his first appointment but rather had gained 11 pounds, had been recently diagnosed with gastroesophageal reflux disease, and had a prior history of allergic rhinitis. Dr. Barkman found all of this material to his understanding of the connection between the exposure incident and Plaintiff's RADS. While he consistently reaffirmed Plaintiff's RADS diagnosis, he also clearly stated that he was no longer able to render an opinion, based upon a reasonable degree of medical certainty, that the exposure incident on June 19 caused Plaintiff's RADS.

Plaintiff's counsel, naturally unsatisfied with this response, then asked Dr. Barkman whether "the temporal connection between the accident and [Plaintiff's] symptomology is important?" Dr. Barkman responded that it was and agreed that it was fair to correlate the two. Counsel also asked Dr. Barkman to confirm that he knew that "secondary to inhalation injury his condition can be diagnosed in the manner in which you have, correct?" Dr. Barkman responded that this was correct.

Defendant asks the Court to exclude any opinion Dr. Barkman may have as to causation on the basis that Dr. Barkman specifically disclaimed the ability to provide such an opinion. Defendant also moves for summary judgment on Plaintiff's one claim against it, negligence, on the grounds that Plaintiff has no admissible evidence as to causation.

## II.     Legal Standard

**A.     Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof, though "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[6] "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (quoting *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

claim."[7]  The nonmovant must then bring forth "specific facts showing a genuine issue for trial."[8] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9]  The court views all evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party."[10]

## B.     Daubert and Rule 702 Standards

Federal Rule of Evidence 702 governs expert testimony. It provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes a "gatekeeping role" upon the district court to ensure that expert testimony is relevant and reliable.[11]  To fulfill this role, the district court must "make specific factual findings on the record which are sufficient for an appellate court to review the trial court's conclusion concerning whether the testimony was scientifically reliable and factually relevant."[12]  The party

---

[7] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 325).

[8] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (quoting *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

[9] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (quoting *N. Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 806 (10th Cir. 2000)).

[11] *Daubert*, 509 U.S. at 597.

[12] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005) (citing *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003)).

offering the expert testimony bears the burden of showing that the expert's testimony is admissible.[13]

### III.     Analysis

Defendant's two Motions largely turn on one issue: whether Dr. Barkman should be permitted to opine that Plaintiff's RADS was caused by the inhalation exposure incident on June 19, 2017.  This issue becomes rather simple given that Dr. Barkman testified, in no uncertain terms, that he could not render an opinion as to causation based upon a reasonable degree of medical certainty.  It is this later qualification that controls, not Dr. Barkman's earlier response to Plaintiff's questionnaire in which he opined that the incident was the cause of Plaintiff's RADS.[14]

Plaintiff responds by urging the Court to find that Dr. Barkman, in his deposition testimony, *did* render an opinion finding a causal connection between the June 19 incident and Plaintiff's RADS.  Plaintiff directs the Court to Dr. Barkman's agreement that he could "correlate" the injury and accident "simply as a result of the temporal relationship" between the two as well as the "post-accident symptomatology."  Further, Dr. Barkman agreed that "secondary to inhalation injury his condition can be diagnosed" as RADS.  Plaintiff argues that these portions of Dr. Barkman's deposition indicate that his original opinion that the inhalation incident caused Plaintiff's RADS remains unchanged.

---

[13] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001)).

[14] *See Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1267 (10th Cir. 2013) ("Talavera cannot create a genuine dispute of material fact solely by relying on a conclusion that was written in an expert report and later qualified during that expert's deposition. A witness's later qualifications are the relevant 'opinions' for purposes of summary judgment unless there is some reason for disregarding them."); *see also Prudential Ins. Co. of Am. v. Textron Aviation*, Inc., 2018 WL 1992423, at *17 (D. Kan. 2018) ("[P]laintiff cannot rely on the expert report to controvert Mr. Guyton's sworn deposition testimony that plaintiff never retained him to provide an opinion about causation.").

At best, these portions of Dr. Barkman's deposition can be read as his recognition of a "temporal relationship" between the incident and Plaintiff's RADS. But Plaintiff's contention that this is sufficient to draw a causal connection between the two is without merit. This argument has the misfortune of having been rejected by both the Kansas Supreme Court and the Tenth Circuit. In *Kuxhausen v. Tillman Partners, L.P.*,[15] the Kansas Supreme Court affirmed the district court's exclusion of the plaintiff's expert and the resultant grant of summary judgment to the defendant. The court found that the expert's opinion was "ultimately based on nothing more than *post hoc ergo propter hoc* logic: the symptoms follow the exposure; therefore, they must be due to it."[16] "Such reasoning," the court concluded, "is nothing more than speculation."[17] Similarly, the Tenth Circuit in *Sunward Corp. v. Dun & Bradstreet, Inc.*,[18] rejected, albeit outside the context of expert witnesses, evidence based on "reasoning from sequence to consequence, that is, assuming a causal connection between two events merely because one follows the other."[19] Recognizing this as *post hoc ergo propter hoc* logic, the court stated that "a conclusion based upon such reasoning is not a reasonable inference but is mere speculation and conjecture."[20]

The Court will not permit Dr. Barkman to testify that the "temporal relationship" between the incident and Plaintiff's symptoms signifies a causal relationship between the two. Nor will the Court permit Plaintiff to rely on Dr. Barkman's earlier statement that the June 19 incident caused Plaintiff's RADS, given that he later testified that he could no longer offer an opinion as to

---

[15] 291 Kan. 314, 241 P.3d 75 (2010).

[16] 241 P.3d at 81.

[17] *Id.*

[18] 811 F.2d 511 (10th Cir. 1987).

[19] *Id.* at 521 (quotation omitted).

[20] *Id.* at 521 n.8.

causation based on a reasonable degree of medical certainty. Defendant's Motion to Exclude is granted.

This leaves Plaintiff without any admissible expert testimony[21] establishing a causal connection between his injury and the Defendant's alleged negligence in failing to properly mark the natural gas main. Causation is obviously an element of Plaintiff's negligence claim, on which he bears the burden of proof.[22] Moreover, expert testimony is required in this case given the complexity of the relationship between an exposure and a RADS diagnosis— "a disease with which . . . most lay people have no familiarity."[23] For this reason, "a typical layperson does not possess the requisite knowledge to draw a causative line, without the assistance of a medical expert, between a brief encounter" with an irritant (which, notably, is an unknown in this case) and the onset of RADS.[24] In cases of similarly complicated causal connections, Kansas courts have likewise required the plaintiff to come forward with expert testimony to support his case.[25] Thus,

---

[21] At the hearing, the parties and the Court briefly discussed the testimony of Dr. Wachtel. Dr. Wachtel was designated by Plaintiff as a rebuttal expert, and Plaintiff has confirmed that he only intends to offer the testimony of Dr. Wachtel to rebut the testimony of Dr. Aris, Defendant's retained expert. The testimony of Dr. Wachtel, as a rebuttal expert, cannot support Plaintiff's case-in-chief. *Stephenson v. Wyeth LLC*, 2011 WL 4900039, at *1 (D. Kan. 2011); *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters, LLC*, 2021 WL 4989926, at *2 (S.D. Fla. 2021) ("It is well-settled that under Federal Rule of Civil Procedure 26(a)(2)(C)(ii), a party cannot rely on experts designated solely as rebuttal experts in their case-in-chief to avoid summary judgment.").

[22] *Kuxhausen*, 241 P.3d at 81 (quotation omitted).

[23] *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 702 (7th Cir. 2015).

[24] *Id.*

[25] *See, e.g.*, *Knowles v. Burlington N. Ry. Co.*, 18 Kan. App. 2d 608, 856 P.2d 1352, 1355 (1993) ("[T]he connection between non-Hodgkins lymphoma and exposure to certain defoliants is not the kind of information that is elementary or of common knowledge. Therefore, without the help of expert opinion testimony, lay jurors would be incapable of forming a correct judgment."); *see also Kuxhausen v. Tillman Partners, L.P.*, 40 Kan. App. 2d 930, 197 P.3d 859, 862 (2008), *aff'd*, 291 Kan. 314, 241 P.3d 75 (2010) ("And without expert testimony, Kuxhausen has no claim because it's certainly not self-evident to a layperson that a relatively brief exposure to paint fumes may lead to permanent sensitivity to a variety of chemicals.").

counsel's suggestion that Plaintiff's own testimony as to causation is sufficient to get his case to a jury is incorrect.

With no expert testimony as to causation, Plaintiff has offered no admissible evidence on an issue as to which he bears the burden of proof at trial. He fails to create a genuine dispute of material fact on this issue, and given the lack of evidence, no reasonable jury could find that the exposure incident caused Plaintiff's RADS. As such, summary judgment in favor of Defendant is appropriate.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude the Causation Opinion of Dr. Barkman (Doc. 144) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 146) is **GRANTED**.

**IT IS SO ORDERED.**

This case is now closed.

Dated this 26th day of August, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE